

# In the
# Missouri Court of Appeals
## Western District

STATE EX REL. MATTHEW STONE,   )
   )
        Appellant,   )  WD86214
   )
V.   )  OPINION FILED:
   )  APRIL 9, 2024
MISSOURI COMMISSION ON HUMAN )
RIGHTS, ET AL.,   )
   )
        Respondents.   )

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Cotton Walker, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Alok Ahuja, Judge
and Edward R. Ardini, Jr., Judge

Matthew Stone ("Stone") appeals a judgment from the Circuit Court of Cole County ("trial court") denying Stone's petition for permanent writ of mandamus against the Missouri Commission on Human Rights ("MCHR") and its Executive Director Alisa Warren ("Warren").  Stone raises one point on appeal and argues the trial court erred in denying his petition because the evidence established that MCHR did not make a valid and legal determination of probable cause when terminating his claim, and thus, Stone has an unequivocal right to the issuance of a right-to-sue letter.  We reverse the judgment of the trial court and remand for further proceedings in accordance with this opinion.

## Factual and Procedural History

On June 21, 2018, Stone filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting claims of disability discrimination, hostile work environment, and retaliation against his employer The Doe Run Company ("Company"). Stone's complaint was simultaneously filed with the MCHR pursuant to a work-sharing agreement.[1] Stone's complaint included the following information:

Stone began working for the Company in November 2012. During his employment Stone had a back condition which led to significant back problems, limiting his physical abilities. Stone told the Company about his back condition. Stone alleged his direct supervisor subjected him to a hostile work environment because he would harass Stone about missing work for doctor's appointments, he made derogatory comments about Stone to co-workers, and he specifically assigned Stone physically demanding job responsibilities that he knew would be difficult for Stone to perform safely. Stone asserted he told the Company's Human Resources representative about the harassment, but no action was taken to correct his supervisor's behavior. In January 2018, Stone alleged his supervisor made physical contact with him by forcibly jabbing Stone in the chest and the supervisor yelled at Stone. Stone asserted there were one or two other occasions the supervisor hit Stone in the chest with a closed fist. Stone claimed

---

[1] "Any complaint which is filed with the federal Equal Employment Opportunity Commission . . . shall be deemed filed with the [MCHR] on the date that such complaint is received by [the EEOC]." Sec. 213.075.2. All statutory references are to the Revised Statutes of Missouri (2016), as currently updated, unless otherwise noted.

2

he reported the incident to the Company, and three days later, on January 11, 2018, Stone's employment was terminated.

The EEOC investigated Stone's charge. In the EEOC's findings, it noted the Company denied all allegations of discrimination. The Company alleged Stone never requested a reasonable accommodation and that Stone "barely" provided documentation about his disability. Further, the Company alleged Stone was provided with wide latitude regarding any doctor appointments and scheduling. The Company also alleged there was a report about the altercation between Stone and his supervisor. The Company asserted that Stone admitted he used profanity, and the supervisor admitted to poking Stone in the chest. According to the Company, both employees were terminated at that time. The EEOC noted Stone was offered the opportunity to rebut the Company's response, but Stone did not provide the EEOC with any new information. As such, the EEOC concluded it was "very unlikely that [it] would find a violation if [it] continued to investigate." On March 5, 2019, the EEOC mailed Stone a notice of its dismissal of his charge and his right to sue the Company under federal law. Thereafter, MCHR's Information and Training Coordinator, T.O.,[2] reviewed Stone's charge to determine whether MCHR should adopt the EEOC's findings. T.O. reviewed the EEOC's investigation summary and determined there was no probable cause to support a violation. T.O., acting on behalf of MCHR, terminated the proceedings in Stone's case

---

[2] Pursuant to section 509.520, we do not include the names of witnesses other than parties.

3

without granting Stone a right to sue in state court. On or about April 19, 2019, Stone was notified of MCHR's decision.

On or about April 23, 2019, Stone contacted T.O. requesting MCHR to cancel the termination of his proceedings because Stone believed MCHR did not have a legitimate basis for termination. Additionally, Stone requested a Notice of Right to Sue ("right-to-sue letter"). T.O. responded, informing Stone the case had been previously closed.

On May 16, 2019, Stone filed a petition for writ of mandamus.[3] Pertinent to this appeal, Stone asserted MCHR failed to make a determination of whether probable cause existed. On May 22, 2019, the trial court entered a preliminary writ of mandamus, directing MCHR to respond. MCHR responded on July 15, 2019.

On January 6, 2023, the trial court conducted a bench trial on Stone's petition. Interrogatory answers from MCHR and Warren were admitted into evidence. Warren's interrogatory answers provided that during the time period of Stone's complaint, Warren designated T.O. and several other individuals to have the authority to terminate proceedings relating to charges of discrimination. These individuals also had the authority to administratively close proceedings. The only person Warren had authorized to make a determination if there was "probable cause" with any filed charges of discrimination was E.K. Additionally, interrogatory answers from MCHR provided that MCHR acted on Stone's charge by reviewing the EEOC's closure documents and adopting the EEOC's no reasonable cause finding. MCHR did not administratively close

---

[3] Pursuant to sections 213.085 and 536.150, Stone was permitted to obtain judicial review of MCHR's decision by filing a petition for a writ of mandamus with the trial court.

4

the investigation of Stone's charge, rather it terminated the proceedings due to an affirmative determination of no probable cause.

At trial S.T., an MCHR employee, testified. During the time of Stone's complaint, S.T. was the Director of Administrative Services and was T.O.'s direct supervisor. S.T. testified T.O. was the person who received and opened cases from the EEOC, looked at the EEOC's findings, and closed cases. S.T. explained the different types of closures the MCHR makes. According to S.T., a finding of no probable cause is a standard closure and "an administrative closure is kind of anything else." S.T. also testified T.O. had the authority to close a file because of lack of probable cause.

Stone and MCHR each filed their proposed findings of fact and conclusions of law on February 6, 2023. On March 10, 2023, the trial court entered its judgment. The trial court denied Stone's permanent writ of mandamus, concluding T.O. had the authority to issue the termination letter on behalf of MCHR. The trial court noted part of T.O.'s job duties included "determining how to administratively close charges of discrimination." Further, the trial court found "a no probable cause finding is one of MCHR's options when determining how to administratively close a charge of discrimination dually filed with the EEOC and MCHR." This appeal follows.

## Standard of Review

"When a circuit court issues a preliminary order and a permanent writ later is denied, the proper remedy is an appeal." *Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 914 (Mo. banc 2018) (internal citation and quotations omitted).

5

> Generally, mandamus is reviewed on appeal as any other non-jury civil matter.  Accordingly, we will affirm the circuit court's denial of [Stone]'s petition for writ of mandamus unless we find that it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.  We review questions of law, including questions of statutory interpretation, *de novo*.

*State ex rel. Basinger v. Ashcroft*, 677 S.W.3d 562, 565 (Mo. App. W.D. 2023) (internal citations and quotations omitted).  "To obtain a writ of mandamus, one must establish a clear, unequivocal, specific right to a thing claimed."  *State ex rel. Swoboda v. Mo. Comm'n on Hum. Rts.*, 651 S.W.3d 800, 810 (Mo. banc 2022) (internal quotation omitted).

## Analysis

As an initial matter, MCHR argues Stone's brief does not comply with Rule 84.04,[4] and as such, we should dismiss this appeal.[5]  "Rule 84.04's requirements are mandatory."  *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022).  "Although this Court prefers to reach the merits of a case, excusing technical deficiencies in a brief, it will not consider a brief 'so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal.'"  *Id.*  To comply with Rule 84.04, "a point on appeal must proceed under one of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework."  *Hampton v. Llewellyn*, 663 S.W.3d 899, 902

---

[4] All rule references are to the Missouri Supreme Court Rules (2023).

[5] MCHR asserts Stone's brief was deficient for failing to include a preservation statement pursuant to Rule 84.04(e) and asserts Stone's point relied on failed to state which of the three *Murphy* grounds serves as the basis for his appeal.  Stone filed an amended brief including a preservation statement, thus curing the first deficiency.  Therefore, we only discuss the deficiency alleged regarding Stone's point relied on.

6

n.2 (Mo. App. W.D. 2023) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). [6]

Stone's point relied on fails to specifically assert which *Murphy* ground his appeal is based on.  However, Stone's point on appeal is sufficiently understandable from the argument portion of his brief.  Therefore, we exercise our discretion and review this case on the merits.  *See Int. of S.M.W.*, 658 S.W.3d 202, 212-13 (Mo App. W.D. 2022) ("We do have discretion to review non-compliant briefs *ex gratia* when the argument is 'readily understandable.'").

### *Misapplication of the Law*

Stone asserts the trial court misapplied the law when concluding T.O. had the authority to terminate Stone's proceedings on behalf of MCHR for lack of probable cause based upon his power to administratively close Stone's charge.  We agree.

"[A]dministrative rules and regulations are interpreted under the same principles of construction as statutes." *Rundell v. Dir. of Revenue*, 487 S.W.3d 496, 499 (Mo. App. E.D. 2016).  "When interpreting a statute, the primary goal is to give effect to the legislative intent as reflected in the plain language of the statute." *Id.* at 500.

When a person files a complaint with the EEOC, pursuant to a work-share agreement, the complaint is also deemed filed with MCHR on that date.  *See* Sec. 213.075.2.  Once a complaint is filed with the MCHR, "the executive director shall, with

---

[6] "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

the assistance of the commission's staff, promptly investigate the complaint[.]"  Sec.

213.075.3.  "[I]f the director determines after the investigation that probable cause exists

for crediting the allegations of the complaint, the executive director shall immediately

endeavor to eliminate the unlawful discriminatory practice complained of . . . ."  *Id.*

MCHR's regulations provide guidance on the procedures MCHR should take if there is a

no probable cause determination.  *See* 8 CSR 60-2.025.

If the executive director or his/her designee determines there is no probable cause,

the complaint is dismissed.  *See* 8 CSR 60-2.025(7)(A).  Additionally, a complaint may

be administratively closed by the executive director or his/her designee for a variety of

reasons.  *See* 8 CSR 60-2.025(7)(B).  Lack of probable cause is not one of the listed

reasons for a complaint to be administratively closed.[7]  *Id.*  The regulations provide how

parties shall be notified "of the commission's dismissal *or* administrative closure."  8 CSR

60-2.025(7)(C) (emphasis added).  Additionally, it details how the executive director or

his/her designee can vacate "a dismissal *or* administrative closure."  8 CSR 60-

---

[7] A complaint can be administratively closed for any of the following reasons:

1. For failure of the complainant to cooperate with the commission; 2. Upon the commission's inability to locate the complainant; 3. For lack of jurisdiction; 4. In the absence of any remedy available to the complainant; 5. When the complainant files a suit in federal court on the same issues against the respondent named in the commission complaint; 6. When the commission has not completed its administrative processing within one hundred eighty (180) days from the filing of the complaint and the person aggrieved requests in writing a notice of the right to bring a civil action in state court, the executive director or his/her designee will administratively close the complaint and issue the notice; or 7. In any other circumstance where the executive director deems administrative closure to be appropriate.

8 CSR 60-2.025(7)(B).

8

2.025(7)(D) (emphasis added). Thus, a plain reading of the regulations makes clear a complaint with the MCHR may be either: 1) dismissed for lack of probable cause, or 2) administratively closed. These are two separate and distinct closure mechanisms.

The trial court's judgment found the record to be clear that "MCHR dismissed [Stone's] Charge for a lack of probable cause." The trial court's judgment provided:

> The evidence is clear that as an MCHR Information and Training Coordinator, part of [T.O.]'s job duties included determining how to administratively close charges of discrimination filed with both the EEOC and MCHR. [T.O.]'s supervisor, current MCHR Deputy Director [S.T.], testified that a *no probable cause finding is one of MCHR's options when determining how to administratively close a charge of discrimination* dually filed with the EEOC and MCHR. Therefore, [T.O.] can exercise that option under the plain language of section 213.075.3 and 8 CSR 60-2.025(7)(A).

(emphasis added).

The adopted language in the trial court's judgment conflates MCHR's dismissal of proceedings based on a finding of no probable cause with administratively closing an investigation on other grounds; these are two separate and distinct termination mechanisms. *See* 8 C.S.R. 60-2.025(7)(A)-(7)(B). Here, Stone's charge was dismissed for lack of probable cause. It is irrelevant if T.O. had the authority to administratively close charges of discrimination, the relevant question is his authority to close an investigation with a finding of no probable cause. T.O.'s purported authority to administratively close charges of discrimination does not automatically bestow upon him the authority to terminate proceedings for lack of probable cause.

At trial, there was conflicting evidence about T.O.'s purported authority to terminate Stone's proceedings for lack of probable cause. MCHR employee S.T. testified

9

that T.O. had the authority to make a no probable cause finding and close an investigation. On the other hand, while Executive Director Warren's interrogatory responses listed T.O. and multiple other employees as persons to whom she had delegated "the authority *to administrative close* proceedings," in a separate interrogatory response she stated that she had delegated "the authority *to determine 'probable cause'*" only to her Deputy Director, E.K. As noted, only the executive director or his/her designee has the authority to terminate proceedings for lack of probable cause. *See* 8 CSR 60-2.025(7)(A). There was no evidence that either Warren or E.K. made the probable cause determination in this case. Because the trial court misapplied the law, the evidentiary conflict over T.O.'s authority has not been properly resolved. "[C]onflicts in the evidence [are] for the trial court to resolve." *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 477 n.3 (Mo. banc 2018). Thus, it must be determined whether Warren designated T.O. with the authority to terminate proceedings for lack of probable cause. Therefore, we find the trial court misapplied the law when it determined T.O. had the authority to terminate Stone's charge for lack of probable cause simply because of T.O.'s purported authority to administratively close proceedings.

***Writ of Mandamus***

Stone asserts he established a clear and unequivocal right to the issuance of a right-to-sue letter, and thus the trial court erred in denying his petition for writ of mandamus. Section 213.111 sets forth when a complainant is entitled to a right-to-sue letter from the MCHR.

Section 213.111.1 provides:

> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice . . . the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action . . . .

On June 21, 2018, Stone filed a charge of discrimination with the EEOC. On April 19, 2019, MCHR sent Stone a letter, signed by T.O., of its decision to terminate Stone's complaint over 300 days from when Stone filed his complaint. On April 23, 2019, Stone requested a right-to-sue letter. Stone had the statutory right to request a right-to-sue letter 180 days after filing his complaint while MCHR's proceedings were still pending; however, he requested the letter four days after MCHR purportedly terminated the proceedings.

Pursuant to section 213.111.1 Stone is entitled to the right-to-sue letter, *only if* MCHR did not validly terminate Stone's complaint on April 19, 2019. Because the trial court misapplied the law, the central issue as to whether T.O. was authorized to terminate Stone's proceedings due to lack of probable cause has not been resolved. On remand, the trial court must determine whether T.O. had the authority to terminate Stone's proceedings for lack of probable cause, which is different from the authority T.O. may have to administratively close similar proceedings. Therefore, the judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.

11

## Conclusion

The judgment is reversed, and the case is remanded.

_____
Gary D. Witt, Chief Judge, Presiding

All concur

12